Millard COX, Jr. *v.* Marian E. FARRELL

87-61                                728 S.W.2d 954

Supreme Court of Arkansas
Opinion delivered May 11, 1987

*Butler, Hicky, Hicky & Routon, Ltd.*, by: *Preston G. Hicky*, for appellant.

*Doddridge M. Daggett*, Lee County Child Support Enforcement Unit, for appellee.

STEELE HAYS, Justice. This appeal is from a judgment in a paternity suit finding that the appellant is the father of a child born to appellee on June 3, 1983. The case is certified to us by the Court of Appeals because the interpretation of a statute is involved. Rule 29(c).

Appellee Marian Farrell filed a verified complaint in the Lee County Court alleging that she had delivered a child out of wedlock fathered by appellant Millard Cox, Jr. Cox denied the accusation and Ms. Farrell moved for an order requiring the parties to submit to blood tests. The tests were ordered but were never taken. A special referee heard the case and found Cox was

not the father of the child. An order consistent with that finding was entered by the county court.

On appeal the circuit court denied Ms. Farrell's motion for a non-jury trial, finding that Ark. Stat. Ann. § 34-701.1(b) (Supp. 1985) was unconstitutional as depriving the litigants of their right of trial by jury. However, the constitutionality of § 34-701.1(b) was recently upheld by this court in *Dunn* v. *Davis*, 291 Ark. 492, 725 S.W.2d 853 (1987). No objection to a jury trial was preserved.

Ms. Farrell testified that she became pregnant in September 1982 and carried the baby to full term, June 3, 1983. She said she and Junior Cox drank beer together at the Marianna VFW Club and then drove to his home in her truck where they had sexual relations. She was certain Cox was the father and denied having relations with any other individual during August, September or October. She admitted giving contradictory accounts to Social Services and that she did not tell Cox she was pregnant until after the child was born.

Millard Cox denied having had sexual relations with Ms. Farrell. He admitted having been with her at the VFW Club, contending it was around October 10. He said he had been drinking heavily and he left his vehicle at the club and she drove him home. He went to bed and when he awoke next morning she was gone. He testified that he had been married three times without having fathered a child, but was uncertain of his sterility.

On cross-examination and over the objection of defense counsel Cox acknowledged that the child support unit had offered to pay for a blood test, that he had been asked to take a blood test but had refused. The jury returned a unanimous verdict finding Cox to be the father.

Cox has appealed on three grounds: it was error to permit counsel to question him about a blood test, the jury was incorrectly instructed and the trial court should have granted a motion for a new trial. We find no merit in the points.

I

Ark. Stat. Ann. § 34-705.1 (Supp. 1985) includes a provision that if blood tests are ordered in paternity cases and one

party refuses to submit to the test, that fact shall be disclosed at trial unless good cause is shown. The issue is whether, in a trial de novo, one party may make reference to an event which occurred as the result of an order made by the court which conducted the first trial. Cox asserts that because counsel for Ms. Farrell was allowed to question him about his refusal to take a blood test which had been ordered by the referee prior to the first trial in the county court he was denied a trial de novo in circuit court.

Arkansas Const. Art. 7, § 33, provides that "[a]ppeals from all judgments of county courts may be taken to the circuit court under such restrictions and regulations as may be prescribed by law." For many years, statutes have provided that the appeal from various kinds of county court proceedings would be by trial de novo in the circuit court. *See, e.g.*, Ark. Stat. Ann. § 27-2006 (Repl. 1979), and Ark. Stat. Ann. § 34-709 (Repl. 1962), the latter referring to a statute which has now been deemed superseded, Ark. Stat. Ann. § 26-1308 (Repl. 1962), which provided for appeal from justice of the peace court to circuit court "anew on its merits." Interpreting these statutes we have said that the trial in the circuit court must be as if the case had been brought in that court in the first instance. *Gocio* v. *Harkey*, 211 Ark. 410, 200 S.W.2d 977 (1947); *Carpenter* v. *Leatherman*, 117 Ark. 531, 176 S.W. 113 (1915). *See also Bigelow* v. *Union County*, 287 Ark. 486, 701 S.W.2d 125 (1985).

In *Batesville* v. *Ball*, 100 Ark. 496, 140 S.W. 712 (1911), we said:

> When a cause is appealed from the county court to the circuit court, the latter court obtains jurisdiction over the matter to the same extent as if it had been originally brought in that court, and it must proceed to fully try and determine the cause. It does not pass upon the question as to whether or not the county court has committed error in any of its rulings, either of law or of fact, but it must try the cause upon its merits, both of law and of fact, just as if it had been originally brought in the circuit court. It does not either affirm or reverse the findings or judgment of the county court, but tries the cause alone upon its merits, and determines the same by the exercise of its own discretion and judgment. [100 Ark. at 499, 140 S.W. at 714].

In the case before us now, the referee, acting for the county court, exercised the discretion provided to him in Ark. Stat. Ann. § 34-705.1 (Supp. 1985) which says he "may" order blood tests to determine paternity or lack of it on the part of the defendant. Had Ms. Farrell asked the circuit court to enforce the referee's order, it is clear the circuit court would not have been bound by the discretionary ruling of the county court referee, and the circuit court could have made its own order, or declined to make one, as it deemed proper. However, that is not the issue with which the circuit court was presented.

■ Cox moved *in limine* to prohibit references to the blood test order as a result of being informed Ms. Farrell intended to introduce testimony of a physician to demonstrate the accuracy of such tests. That testimony was to be presented in response to Cox's anticipated testimony that he did not believe the tests accurate and for that reason had refused to submit to one. The circuit judge ruled that Cox could be asked about his refusal to submit to a blood test because it was a "factual" matter. That was exactly correct. No reference was to be made to the testimony taken in the county court nor was the circuit court to be bound in any manner by factual conclusions reached in the county court or any ruling made by the referee. It was simply a fact that Cox had refused to take a blood test, and that fact was made admissible in evidence by Ark. Stat. Ann. § 34-705.1 (Supp. 1985).

■ While it may be contended that the admissibility of the appellant's refusal to submit to the test is dependent, indirectly at least, upon the county court's order and thus a reference to the county court record must be made, we are not troubled by such a reference. Section 34-701.1(b) requires the county court record to be filed with the circuit court when an appeal is taken. Thus the general assembly was aware that some reference to the record might occur in the de novo proceeding. Without reference to the county court record the circuit court would be unable to ascertain the cause of action below to which the appeal is limited. *See Armstrong* v. *Harrell*, 279 Ark. 24, 648 S.W.2d 450 (1982). As long as the circuit court conducts a trial of the case appealed without reference to error in the county court and without being bound in any way by the county court's conclusions of fact or law, the right of an appellant to a trial de novo has not been violated.

## II

Millard Cox also urges the trial court should not have given this instruction to the jury:

"Court's Instruction No. 7. Where relevant evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and that party fails to do so without satisfactory explanation, you may draw an inference that such evidence would have been unfavorable to that party."

Cox submits that the instruction shifts the burden of proof from the plaintiff to the defendant. We disagree. The jury was instructed correctly on the burden of proof and nothing in the instruction alters the burden. The instruction merely tells the jury, in essence, that where one party fails to produce relevant evidence within his control, the jury may infer that such evidence would be unfavorable.

We have said more than once the instruction is a correct statement of the law and, where the circumstances support such an inference, it is not error to give the instruction. *Harry & Acklin Ford* v. *Landreth,* 254 Ark. 483, 494 S.W.2d 114 (1973), *Jones* v. *Brown, et al., Trustees,* 242 Ark. 537, 414 S.W.2d 618 (1967); *Saliba* v. *Saliba,* 178 Ark. 250, 11 S.W.2d 774 (1928). It was for the jury to decide whether the inference was proper.

## III

The final contention deals with a motion for a new trial. After entry of the judgment Cox filed a timely motion for a new trial based on newly discovered evidence. ARCP Rule 59. An affidavit of Bobby Worley accompanied the motion stating that he had been dating and having sexual relations with Marian Farrell at the time she became pregnant, that she told him the baby was his and asked for $100 in child support, and that he had been working in Texas and only recently learned of the paternity suit against Millard Cox.

Following a hearing on the motion at which Worley testified more fully as to his relations with Ms. Farrell the circuit court denied the motion upon findings that the proof was cumulative and could have, with diligence, been discovered. We find no abuse

of discretion by the trial court in denying the motion. *Sellers* v. *Harvey*, 220 Ark. 541, 249 S.W.2d 120 (1952); *Arkansas Power & Light Co.* v. *Mason*, 191 Ark. 804, 87 S.W.2d 988 (1935).

There were a number of discrepancies in Worley's testimony. While he maintained he was having sexual relations with Ms. Farrell at around the time in question, he denied that the child was his. He said he and Ms. Farrell were living together at a trailer park close to where Cox lived from before she became pregnant until some months afterwards and everyone knew it. We cannot say it was error to find that, with diligence, the evidence could have been discovered.

Affirmed.